THE ENTERPRISE SOAP WORKS, Respondent, v.
HENRY B. SAYERS *et al.*, Appellants.

St. Louis Court of Appeals, November 22, 1892.

1. **Pleading:** INCONSISTENT COUNTS IN PETITION: ELECTION. The different counts in a petition are inconsistent when proof of one count necessarily disproves the other. And *held* that a count for the breach of warranty in a sale of personalty was inconsistent with another count based on the theory of the rescission of such sale.

2. ———: ———: ELECTION. When two counts of a petition are inconsistent, the plaintiff should, on motion of the defendant, be compelled to elect between them.

3. **Inconsistent Remedies:** EFFECT OF ELECTION. When an election is made between inconsistent remedies, the remedy elected must be prosecuted to a final determination before recourse may be had to any of the others; but, if the remedy elected is unsuccessful on such final determination, the election [of it will not debar recourse to another.

4. ———: ———: SALES. In this action the defendant purchased goods from the plaintiff and paid therefor prior to delivery, but afterwards refused to accept the goods on the ground that they were not in accordance with the contract. He instituted an action by attachment for the recovery of the purchase money on the theory of a rescission, caused the writ of attachment to be levied on the goods, and obtained judgment *in rem* in this proceeding, but no jurisdiction over or judgment against the vendor *in personam*. *Held*, that this adjudication did not constitute a final determination of his right of rescission within the purview of the foregoing rule.

*Appeal from the St. Louis City Circuit Court.*—HON.
DANIEL D. FISHER, Judge.

REVERSED AND REMANDED.

*R. M. Nichols*, for appellants.

(1) If respondent found the goods were not up to the sample in quality, it had a right to rescind the contract, and sue for the purchase money paid thereon, or

to affirm the contract and sue upon the warranty for a breach thereof. Wharton on Contracts, sec. 282; Benjamin on Sales [4 Am. Ed.] sec. 882; *Walls v. Gales*, 6 Mo. App. 243. (2) Having elected to rescind the contract and sue for the purchase money due by it, the contract became annulled for all purposes, and the respondent is bound by that election, to treat the contract as rescinded for all purposes, and cannot now be allowed to maintain an action for the breach of the contract. Wharton on Contracts, sec. 290; Bigelow on Estoppel, pp. 652, 687; *Morris v. Roxford*, 18 N. Y. 552; *Bayard v. Holmes*, 33 N. J. L. 119; *Nanson v. Jacob*, 93 Mo. 334; *Kenney v. Kiernan*, 49 N. Y. 165. (3) The respondent not having appealed from the judgment entered upon the second cause of action, and having rescinded the contract upon which it bases its first first cause of action, there is nothing further to litigate in this matter, and this court should reverse this case. (4) Where several causes of action in the same suit are inconsistent, so that the proof of one necessarily disproves the other, the court should, at the request of defendant, require plaintiff to elect. *Deering & Co. v. Collins*, 38 Mo. App. 86, and cases cited; *Roberts v. Railroad*, 43 Mo. App. 287; *Lee v. Todd*, 20 Mo. App. 271.

*George R. Lockwood*, for respondent.

(1) If the tallow sent plaintiff was not up to sample, plaintiff could, within a reasonable time after its receipt, reject it and sue for the purchase price paid, or keep the goods and sue for damages for breach of the warranty. *Calhoun v. Paule*, 26 Mo. App. 274. (2) The court did not err in refusing to compel the plaintiff to elect upon which count it would proceed. *Brinkman v. Hunter*, 73 Mo. 172; *Gaslight Co. v. St.*

*Louis,* 86 Mo. 495; *Lancaster v. Ins. Co.,* 92 Mo. 460; *Burbridge v. Railroad,* 36 Mo. App. 669; *Sandford v. Railroad,* 40 Mo. App. 15; *Roberts v. Railroad,* 43 Mo. App. 287; *Straub v. Eddy,* 47 Mo. App. 189; *Light, etc., Co. v. Doud,* 47 Mo. App. 439; Abbott's Trial Brief on Pleading, sec. 704, p. 591.

BIGGS, J.—On the twenty-fifth day of October, 1889, the defendants, who are in business in the city of St. Louis, sent the following letter to plaintiff, a corporation doing business in the city of Nashville, in the state of Tennessee: "We to-day mail you a sample of prime tallow which passed through fire, and is in consequence discolored by smoke, in every other respect is uninjured. We can sell you one hundred and fifty barrels of same (in syrup barrels) at four and one-eighth cents per pound, we paying freight to your city. Above, provided unsold when hearing from you. Please wire at our expense if you can use it." In answer to this letter the plaintiff sent the following telegram:

"NASHVILLE, TENN., 10-28-'89.

*"Henry Sayers & Co., St. Louis, Mo.:—*

"Will take tallow, hold for instructions; if sold answer."

In pursuance of this correspondence the defendants shipped the tallow to the plaintiff at Nashville, and at the date of the shipment they drew a draft on the plaintiff for $1,871.62, this being the agreed amount of the purchase price for the shipment. This draft was presented to the plaintiff, and paid by it before the arrival of the goods. When the goods arrived, the plaintiff also paid the freight, amounting to $231.26, and it also paid $9 drayage for removing the tallow from the railroad depot to its place of business. Concerning these facts there is no dispute.

The plaintiff's petition contains two counts, but both causes of action stated grow out of the above transaction. The first count is for the recovery of damages alleged to have been sustained by the plaintiff by reason of the inferior quality of the tallow. It was averred in substance that the tallow was not up to the sample which they received, and that it was not of the quality or value represented in the defendant's letter; that it was not of the value of prime tallow, uninjured except by smoke, but was much inferior thereto, and that it was of the value of only $800. A breach of the warranty was claimed, and judgment asked for $1,311.88, the difference between the amount paid by plaintiff on account of the shipment, and $800 the real value of the goods.

The second count, after setting forth the facts and circumstances attending the transaction, contained averments to the effect that, within a reasonable time after the receipt of the tallow, plaintiff inspected it and found that it was not of the grade, quality or value of prime tallow, uninjured except by discoloration by smoke, and was not of the grade, quality or value of the sample sent to it, but was much inferior thereto, and "that plaintiff then and there refused to accept said tallow and rejected the same, and so notified the defendants, and offered to return said tallow to defendants and demanded the said amounts so paid by plaintiff." It was then averred that thereafter the plaintiff sued the defendants in the chancery court of Davidson county in the state of Tennessee in an action by attachment, and that in said action the tallow was attached as the property of the defendants; that afterwards a decree was rendered in said cause against the defendants for $2,112.48, being the amount paid by the plaintiff on account of the tallow; that it was also decreed that the tallow be sold and the proceeds applied to the payment

of said amount, and that afterwards the tallow was sold. for $800, and that amount less the costs was applied to the payment of the amount so adjudged to be due the plaintiff. The plaintiff prayed for a judgment for $1,386.50, the difference between the amount realized. from the sale of the tallow, less the costs of suit, and the amount paid by plaintiff on account of the shipment. The answer was a general denial. The cause was submitted to the court without a jury, and the finding and judgment were for the plaintiff on the first count, and the damages assessed at $770.80, and judgment was entered for the defendants on the second. count. The defendants have appealed.

At the close of the plaintiff's evidence the counsel. for the defendants moved the court to require the plaintiff to elect upon which count he would stand. The court refused to do this, and the defendants. excepted. It is claimed that the counts are inconsist-ent, and that the court committed judicial error in its. rulings.

It is an elementary principle in pleading that dif-ferent counts in a petition, like different defenses in an answer, must not be inconsistent in any material matter of fact. A proper application of this rule is sometimes difficult. In the case of *Roberts v. Railroad*, 43 Mo. App. 287, we stated that, when proof of one count nec-essarily disproved another, then the two counts were inconsistent, and that a motion to elect was in order at any state of the proceedings. In applying this test, it. can make no difference that the *same cause* of complaint is stated in different counts, and that only one recovery can be had. The counts must nevertheless be incon-sistent. Now let us apply the rule in this case. In the first count the plaintiff declares on a breach of warranty in the contract of sale. In order to recover, it was necessary for him to allege and prove a *completed*

*contract of purchase,* because the right of action on a warranty in the sale of goods must have such a contract for support. In the second count it was alleged that the tallow was sold by sample, that the goods were received, and within a reasonable time thereafter were inspected and found not equal to the sample; that thereupon the plaintiff notified the defendants that it would not *accept* the goods for the reasons stated. These averments made the cause of action one for money had and received, upon the theory that there was no sale, that the draft and freight had been paid without consideration, and that the law implied a promise by defendants to refund the money. It is settled that, where goods are sold by sample, the purchaser has a reasonable time after delivery to inspect them, and, if upon such inspection, the goods delivered are not equal to the sample, and he thereupon *elects to reject* them and so notifies the vendor, *then there is no sale.* This court so decided in the case of *Calhoun v. Paule,* 26 Mo. App. 274, where the authorities were collected and discussed. This statement seems sufficient to show, without any amplification by us, that the two counts are inconsistent in *matter of fact.* Proof of the facts stated in either count necessarily disprove those stated in the other. In one the plaintiff says *there was a sale;* in the other he says *there was no sale.* Whether there was or was not a sale is a mixed question of law and fact. Therefore, the positions assumed by the plaintiff in this action are inconsistent in a matter of fact.

In opposition, the plaintiff's counsel rely on the case of *Brinkman v. Hunter,* 73 Mo. 172. In that case the petition contained two counts. In the first the writing (which was the foundation of the action in both counts) was declared on as an acceptance of the draft, and a recovery was sought on account of a failure

to pay; in the second count the plaintiff sued for damages for a breach of a promise to accept the draft. The court held that this was only a statement of the same cause of action in different counts for the purpose of meeting any possible phase of the evidence, and that the objection that they were inconsistent was not well founded. This view was supposed to find support in the rule of pleading that, "where two distinct and different claims are based upon the same instrument, although the plaintiff may be entitled only to a single satisfaction, both may be stated in the same petition, and should, of course, be stated in different counts." There seems to us to be no analogy between that case and this, for the controversy there was not touching facts but touching their legal effect. The plaintiff declared on a written instrument, and he was uncertain whether the instrument in its legal effect amounted to an absolute acceptance of the draft or only a promise to accept it. Hence, he inserted two counts to meet any possible view the court might take of the legal effect of the instrument.

We have examined the other authorities cited and can find nothing contrary to the conclusion reached by us. We are, therefore, of the opinion that the court committed prejudicial error in declining to force the plaintiff to his election of remedies, and for this reason the judgment must be reversed.

In view of a retrial there is another question presented by the record, which we ought to discuss. This question is presented by the defendants' second instruction which the court refused to give. It reads: "The court declares the law to be that, upon the whole case as made, the finding and verdict must be for the defendants on the first count of the petition." We think that the instruction ought to have been given,

but we cannot concur in the positions taken by counsel for the defendants in support of this assignment. He contends that the institution of the attachment suit in the chancery court of Tennessee and the subsequent proceedings therein constitute an *absolute bar* to the subsequent prosecution of an action on the warranty. If there had been personal service and a personal judgment in the attachment suit, then, under the authorities, the defendants' position would be clearly right. But the proceedings were *in rem*, and the decree of the court affected the attached property only. Therefore, the institution of that suit can be regarded only as an election by the plaintiff to reject the sale and to sue for the purchase money. He must pursue this remedy to a final determination, and, unless he is defeated in such action on the ground that he did not act seasonably in rejecting the sale, he cannot afterwards maintain an action on the warranty. The reason is that the right to sue for the purchase money and the right to sue on the warranty are inconsistent remedies and cannot be concurrent; and the plaintiff, having elected to sue for the purchase money, cannot abandon this remedy until it has been judicially ascertained that his right of action, if he has any, is for a breach of the warranty. We think that this position is supported by both reason and authority, and it is not in conflict with the decision of this court in the case of *Anchor Milling Co. v. Walsh*, 20 Mo. App. 107. That was an action of replevin. The plaintiff's title to the goods depended upon two chattel mortgages executed by the defendant. In defense of the action it was claimed that the plaintiff was estopped by reason of the fact that, prior to its commencement, the plaintiff had sued out a writ of attachment against the defendant, and caused it to be levied upon the same goods as the defendant's property. It appeared that the attachment

had been released prior to the institution of the replevin suit. It was held that the levy of the attachment created no estoppel, and that the plaintiff could dismiss the attachment and pursue the other remedy. The radical difference between that case and this is that the attachment of the goods and the subsequent replevin suit for the same goods were not necessarily inconsistent remedies. Besides it did not appear that the right to replevy the goods existed at the date of the attachment. Therefore, it could not be said that the plaintiff, when he attached the property, elected to pursue one of two remedies. Whatever was said in the opinion of the right of a party to abandon one remedy for the purpose of pursuing another had reference to the facts of that particular case.

In the case of *Nanson v. Jacob*, 93 Mo. 331, upon which the defendants rely, it was held that, where a party proved up before an assignee for the benefit of creditors a claim for goods which had been converted by the assignor, such party would be estopped from afterwards suing for the conversion of the goods. The estoppel was predicated on the judgment of allowance, which was held to be a judgment for all intents and purposes, and conclusive against all parties concerned.

In *Bank v. Beale*, 34 N. Y. 473, it appeared that the plaintiff had consigned a shipment of wool to the defendant for sale. The action was to recover a judgment for the proceeds of the sale. In defense of the action the defendant claimed that the wool belonged to one Sweet, and that Sweet had notified him not to pay the money to the plaintiff. To meet this defense the plaintiff showed that the wool had been purchased by one Sherwood as the agent of Sweet, and had been wrongfully and fraudulently sold to the plaintiff, without any knowledge of the fraud by it; and that, instead of Sweet following the property in the first instance, as

he undoubtedly had a right to do, he brought an action for the money against Sherwood and obtained a *personal judgment* against him. Execution was issued, and at the time of the trial Sherwood was imprisoned under the execution. Touching this defense Judge DAVIS in his opinion said: "Sweet, with a full knowledge of the fraud perpetrated by Sherwood in the disposition of the wool purchased with his funds, elected to prosecute Sherwood for the moneys so misappropriated, instead of following the property, claimed by reason of the fraudulent acts of Sherwood to belong to Sweet. He affirmed the acts of Sherwood, and sought to recover from him the moneys thus improperly used by Sherwood. In other words, he affirmed the contract of sale made by his agent, and sought to recover from him the moneys received on the sale. It is too late now to change his ground and to pursue the property, which he elected to regard and consider that of Sherwood. This principle is emphatically announced in *Lloyd v. Brewster*, 4 Paige, 537, where it was held that if a vendor, who has been defrauded in the sale of his goods, proceeds to judgment against the vendee upon the contract of sale, after he is apprised of the fraud, his election is determined; and he cannot afterwards follow the goods, or the proceeds thereof, into the hands of a third party on the ground of fraud." Judge LEONARD in a separate opinion said: "Sweet had his election to bring his action against Sherwood for the wool purchased by him with the money of Sweet, or for the money advanced, disregarding the claim for the wool. He choose the latter, and cannot, after a *recovery* for the money, maintain an action for the wool. *Morris v. Rexford*, 18 N. Y. 552–557, and cases there cited. The same may be said of an action against the bank or these defendants for the proceeds of the wool."

The case of *Fields v. Bland*, 81 N. Y. 239, was for

the conversion of certain personal property belonging to the plaintiff. The goods had been intrusted to the defendant and his wife for sale, but instead of selling and accounting for them they secreted and took them away. Prior to the institution of the suit for conversion against the husband, the plaintiff accepted from the wife a confession of judgment for the full value of the goods, and collected thereon under execution the sum of $400. The court said: "The plaintiff, by accepting the judgment, and taking out and enforcing his execution, must be deemed to have made his election to treat the goods as the property of the defendant, under a sale by himself (*Bank v. Beale*, 34 N. Y. 477), and he cannot now change his ground."

The reasoning adopted in the foregoing decisions leads logically to the conclusion that, in order to make the election of one remedy an absolute waiver of other inconsistent remedies, it must appear that the remedy first selected has been prosecuted to a successful termination against the party sought to be charged. It is, therefore, obvious that, under the facts we have here, these cases do not support the defendant's argument as to this assignment.

The judgment will be reversed, and the cause remanded, with instructions to proceed in conformity with this opinion. All the judges concur.